Our next case is Norweathers v. U.S. Appeal No. 23-2406. Mr. Roy, whenever you're ready. Good morning, your honors, public counsel, may it please the court, Michael Roy on behalf of Appellant Ronald Norweathers. The District Court erred when adjudicating two of Mr. Norweathers' collateral claims for relief. First, Norweathers established that trial counsel was ineffective by failing to request a treatment by estoppel or apparent authority instruction. And second, the court should have granted an evidentiary hearing on the separate and effective assistance claim regarding the forensics expert. I plan to start with the forensics expert unless this court has other questions. So the first point I want to make is there is a dispute about the standard of review. I realize that normally whether a district court holds a hearing on a 2255 motion is subject to discretion. But in this case, the court simply overlooked the claim. And this isn't something where the claim was buried within his pro se proceedings and like hard for the court to find. The government also flagged the claim. It was fully briefed by both sides. The court just simply overlooked it. So with no discretion to review, I would ask this court to take its own fresh look. Mr. Roy, there's no dispute here that trial counsel retained an expert. That's exactly right. And met with the expert, right? That's correct. And then decided not to call the expert at trial. That's correct. And why is that not just trial strategy? Like routine. And I suspect I know why he didn't call the forensic expert, okay? But why is that just not routine trial strategy that happens in every single case? Well, I would say that we actually don't know why at this point he didn't call the expert. And since this is a pleading stage, he does allege reasons that would show an effective assistance for why his attorney didn't call the expert. But I mean, I guess, what's the limiting principle that you propose here? You have a 2255, my trial, my counsel did something at trial that I didn't like. And therefore, I deserve an evidentiary hearing in front of a district judge to explain that my trial's counsel strategy was ineffective. Oh, no, that's not at all what we're saying. I mean, there was 15-ish. It's hard to say how many claims exactly there was. Only two of them have certificates of appealability. I'd filed the motion to expand the certificate for this forensic expert claim. We didn't ask to expand the certificate for many of the other claims. Right, no, I get it. What's the theory, though? I mean, there's no dispute that trial counsel hired an expert, retained an expert, spoke with the expert, and then decided not to call the expert. Why does that not end the inquiry under ineffective assistance of counsel? Well, if that's all that Mr. Norweathers had said, I agree that would not state a claim for ineffective assistance. But the difference is that he's also saying that his attorney didn't call the expert because he didn't understand what the expert's report was. That makes us more similar to Dunn. Well, so then why? What am I missing? I'm looking for what the expert said. Instead, what I see is the defendant, petitioner, saying what he thinks he would have said. But I don't see, if there's a report from the expert, why isn't it included? Mr. Norweathers does not have a copy of the report from the expert. Does he know what the expert said? Yes, but it's based off of his recollection. He's been in prison for about 15 years. He's been transferred at least four different times. Most of what he has copies of is stuff that can be pulled off of PACER. So I think we agree it's not enough for 2255 or, for that matter, 2254 petitioner to say, if an expert were to look at this, I think we could find an expert who would show that my conviction should be set aside. Oh, absolutely not. But that's not all that he said in this case. He alleged more specifics about what he was able to get from looking at the report from the expert. And it's like there are very specific allegations that when the government did its initial review on site, it compromised the hard drive. And, I mean, it's not necessarily the government frames it as like an allegation of a grand conspiracy. But, I mean, it could just be a simple mistake that they didn't put the right blocker on when they first started looking at things. There was evidence of a system restore function that would have not been possible if the right blocker had been put on. There's evidence that maybe some of the e-mails were deleted. He says specifically on December 21st, 2009, there were e-mails deleted. These are all things he's saying he got from, yes, his own review of the evidence, but also from the expert's review of the evidence and his communications with the expert. And there's corroboration in the record that it wasn't simply trial strategy. I mean, I think the main thing I'd point to is the big pro se motion that's filed at docket 180 of the original criminal case where his trial attorney, in response to a motion to eliminate that had nothing to do with the subject, says, you know, this is something that my client wrote for me a while back. I didn't file it before, and here I'm going to file it now as a response to this motion to eliminate. Nothing to do with the motion to eliminate. But there is Norweather's trying to make in his pro se filing his own arguments about, you know, the cache file, Yahoo, records cache, thumbnails, things about what the locations on the hard drive show, things that he gleamed from the expert. Counsel apparently thought those were good enough arguments to sign his name to Mr. Norweather's motion, but counsel didn't elaborate upon them. He didn't make his own arguments based off of them. He didn't do anything substantive himself. He just admitted that he was repeatedly filing Norweather's own pro se filings. Is there any element of harmless error review with respect to this particular claim based on Mr. Norweather's testimony? Oh, no. I mean, I'm guessing you're saying because he admitted that he had sent the files. Yeah. No, because part of his claim is that, as he talked about during his trial testimony, he tried to bring up arguments about how the files being located in the Yahoo file sharing cache folder or Yahoo messenger cache folder corresponded with someone not saving the images on a hard drive, but instead, like, taking the images and sending them on to someone else. They were only saved as temporary files on the computer. That corresponds with his claims about… I got it. But his testimony is quite, I mean, it's, look, he was on supervised release. He was a convicted sex offender, and he claimed that he was working undercover with an FBI support person to entrap and ensnare people in child pornography. Right? That was the gist of his testimony. Right. And, I mean, so I think this goes to, I guess, the prejudice on both of the claims is what you're getting at. Well, I mean, I guess it does. It clearly goes to, I'm asking about the forensic claim, if we should consider it there. I mean, the other claim, the parent authority, I mean, I guess. With the forensic claim, the issue is, the only thing we can point to about what his arguments were made at trial regarding how the locations of the images on the hard drive corresponded with sending the items to Bonesluck instead of saving them, it was an outburst he made in response to a question while he was testifying. It's not at all what an attorney who was actually presenting that argument with an expert would have presented. I think that makes it closer to the Supreme Court's case in Hinton v. Alabama where he's bringing in some of the same evidence through testimony, through his own testimony, but an outburst on the stand from someone the jury knows is a felon and convicted sex offender and bank robber isn't the same. Who was on supervised release. He was on supervised release. So he couldn't act as a cooperator. I think his probation officer testified to that, right? Or there was evidence. There was evidence of that, yes. He couldn't do what he said he was doing. Well, I'll then pivot then to the prejudice on the second claim. Do you want to save some time for rebuttal? Sure, I'll just answer your question very quickly. Regarding him not following his rules of supervised release, no doubt that's a technical violation of supervised release. According to his apparent authority, the question is whether his reliance on phone suck was reasonable, not whether he reasonably followed his conditions of supervised release. So being able to show that he did technical violations, maybe he could get revoked for doing that, but there's a difference between technically violating supervision conditions and committing a new offense. Okay, thank you. Okay, Ms. Murphy. May it please the Court, opposing counsel. My name is Madeline Murphy. I'm an assistant U.S. attorney, and I'm asking this Court to affirm the district court's denial of the Section 2255 petition on both grounds. Number one, since the defendant failed to show a reasonable probability of a different outcome on his argument concerning the computer forensics expert, and number two, similarly that he failed to show a reasonable probability of a different outcome had the jury been instructed on an apparent authority instruction. Concerning the Court's decision to deny the aspect of the petition having to do with the computer expert, the defendant's claim or the petitioner's claim was A, that his attorney failed to consult enough with the expert, and B, that his attorney failed to call the expert. And as the Court has pointed out in its questions, Norwether's has failed to show a reasonable probability that a computer forensics testimony would have changed the outcome here. It's his burden to come forward to show the second prong of the Strickland test, that there's a reasonable probability of a different outcome here, and he has failed to show what the computer forensic expert would have testified to. He does raise a lot of technical issues and computer forensics type issues, but fails to connect that up with any specific exculpatory evidence. Am I remembering correctly, this is the case where the defendant's laptop was stolen from an agent's car? That's correct. The evening of the search of the defendant's workplace, the agent seized a work computer and a laptop computer. The laptop computer was placed in the trunk of an agent's car, and it was stolen. That is correct, Your Honor. And in the examination of the computer that was left, they failed to use a right blocker to preserve the condition of the computer? Is that right? It's my understanding that they did use a right blocker. Norwether's contends that the right blocker could not have been used for a variety of reasons that he raises in his petition, but there is testimony at trial to the effect that the right blocker was used. Norwether's testified at trial that the primary documents supporting his claim of working with the FBI were on the lost or the stolen laptop. He did not testify at trial that those documents were on the work computer that is the issue here concerning the computer forensics report. So his contention that he doesn't raise until his reply brief any claim that there was some exculpatory evidence on the work computer that is the subject of the computer forensics claim. But what we know here is that his attorney did consult with the computer expert, did receive a report from the computer expert, and then chose not to provide any testimony concerning the computer expert. And in most instances, as the court has already pointed out, where a defense attorney receives an expert report and opts not to present that testimony at trial, it's because it is not exculpatory or in some instances it might be inculpatory. The defendant hasn't met his burden of showing a reasonable probability that that expert report would have been exculpatory here. On the issue of the apparent authority jury instruction, the district court applied the correct test in considering and rejecting the claim on Section 2255 review that even a jury properly instructed on the issue of apparent authority, no rational jury properly instructed on the issue of apparent authority would have acquitted here. Essentially there was plenty of evidence in the record to the effect that the defendant's testimony on this issue is just patently incredible. He testified that he was told by his probation officer that he could not act as a confidential informant. He admitted that he could not repeat to the jury, the district court at trial, how specifically he found Joseph Bonsuk on the internet. He found him in some sort of a chat room. He claimed that the documents supporting this apparent authority defense were on the lost laptop computer. What is most damning to him is that when he presented the recipient of the No Mo' Ravens email address with child pornography, the response isn't a thank you for your work or where did you get this? It's yuck, I don't want kiddie porn. This is scary stuff. And no rational person would think that they were working with an FBI agent after receiving that kind of a response. No legitimate law enforcement agent would reject the very evidence that they purported to be seeking in using this individual as some sort of an informant or a cooperator. So the district court in deciding that no rational jury would have found that Norweather's contention was credible and would have acquitted him on that basis was not an abuse of discretion and has ample support in the record. So for that reason, I would ask this panel to affirm the district court's denial of the section 2255 petition because Norweather's did not meet his burden of showing a reasonable probability that the outcome would have been different on either of his contentions, either the computer forensic review contention or the jury instruction contention. And unless the panel has any further questions for me, I will conclude my argument. Thank you, Ms. Murphy. Thank you. Mr. Wright. Thank you, Judge. One thing I want to clarify is we actually agree with the government that we haven't established prejudice on the forensics iceberg. That's not what we're arguing. We're not arguing that we've substantively won that claim, just that at the pleading stage, he's alleged enough to get a hearing on it. And a couple of points I want to make on that is first, with the lack of an expert report, Judge Hamilton, Judge Maldonado, I'm sure you both saw many times in the district courts evidence of times where prisoners lose things in prison. It's very common in motion practice, even on the Court of Appeals, Judge Kirsch, I'm sure you've seen too in motion practice, very common for people to lose things in prison. It would require extraordinary luck for someone in Mr. Norweather's position to have the expert report when it was never submitted at trial. And his entire claim is that his attorney erred by not presenting the evidence from the expert report. So it's circular to require him to then have the report as part of his claim. The other thing I want to mention is Judge Kirsch, you mentioned during the previous case about how evidence can be both documents but also testimonial statements. Here, Mr. Norweather's Pro Se 2255 motion and his reply were both signed under penalty of perjury. He signed them as affidavits. So as much as the government was arguing in their briefs that there wasn't affidavits or evidence provided, their argument really is that we shouldn't consider Mr. Norweather's own testimony to be evidence. But it is still evidence. Unless there's any further questions, I will take it. Thank you, Mr. Wright. Thank you. Okay, our next case.